# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

DERRICK DEWAYNE GREGGS,    )
                                )

          Petitioner,      )
                                )

v.                             )     **Case No. 10-CV-0720-CVE-TLW**
                                )

ROBERT PATTON, Director,[1]    )
                                )

          Respondent.     )

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner Derrick Dewayne Greggs is a state prisoner appearing pro se. Respondent filed a response (Dkt. # 8) and provided the state court record necessary for resolution of Petitioner's claims (Dkt. ## 8, 9, 10, 11). Petitioner did not file a reply. For the reasons discussed below, the petition for writ of habeas corpus is denied.

## *BACKGROUND*

On October 27, 2005, Deandra Dunn (Deandra) was shot in the upper thigh and Arvelle Givens (Givens) was shot and killed in Tulsa, Oklahoma. Derrick Dewayne Greggs (Petitioner) became a suspect in the shootings based on information provided by Deandra. Deandra told investigators, and testified at trial, that she had arranged for Petitioner to come to her apartment, located at 6415 South Newport Avenue, to buy a large quantity of Ecstasy pills from Givens, a drug dealer. Petitioner arrived at the agreed time and knocked on the door. When Deandra opened the

---

[1]     Petitioner is in custody at the Davis Correctional Facility, a private prison in Oklahoma. Therefore, under Rule 2(a), <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, Robert Patton, Director of the Oklahoma Department of Corrections, is the proper party respondent. Pursuant to Fed. R. Civ. P. 25(d)(1), Robert Patton, Director, is hereby substituted as the respondent in this case. The Court Clerk shall be directed to note such substitution on the record.

door, Petitioner entered with a gun in his hand and said "[t]his is a jack move."[2]  Deandra was able

to run from the apartment.  But, as she ran out of the front door, she heard a "bang."  She soon

realized she had been shot in the leg.  She received treatment for a gunshot wound at Tulsa's St.

Francis Hospital. During questioning by the police, Deandra initially withheld the shooter's name.

However, on October 28, 2005, she gave the police the names of the individuals involved in the

shooting.  She also told police that Petitioner lived at the Arbors apartment complex.

Meanwhile, Tulsa Police Department (TPD) officers were called to a different apartment

complex, Pecan Creek, located near 61st Street and Yorktown Avenue, to investigate residents'

reports of a bloody mattress found upright in a dumpster.  Along with the blood-soaked mattress,

police found various blood-stained items including a comforter, a blue bath mat, a shower curtain,

a red NASCAR jacket with duct tape on the sleeve, bloody tennis shoes, and Givens' California

driver's license.  In light of the amount of blood observed on the items,[3] police officers feared for

the safety of Givens.

On the afternoon of October 28, 2005, based on information provided by Deandra, TPD

officers arrested Petitioner at his apartment.  Petitioner was patted down to search for weapons.

Police found a large wad of cash in his right front pants pocket.[4]  The officers then obtained a search

warrant for Petitioner's apartment and recovered evidence including a pistol, Petitioner's cell phone,

---

[2]      "Jack move" is a street term for robbery.

[3]      Subsequent DNA testing revealed that blood found on the mattress cover pulled from the
dumpster was Givens' blood.

[4]      The cash totaled $1,115.  In addition, the wad of cash had blood on it.  Subsequent DNA
testing revealed that the blood on the wad of money was Givens' blood.

and various rifle accessories, including an ammo drum, a flak jacket, a rifle case, and a scope for a rifle.

Petitioner was transported to the Detective Division, where he was interviewed for approximately seven hours.  Petitioner was read his <u>Miranda</u>[5] rights, initialed and signed a Notification of Rights Waiver form, and agreed to talk to the detectives.  He initially denied any knowledge of the shootings and, after 30-40 minutes of questioning, detectives left the interview room.  However, as police officers worked to package evidence recovered from Petitioner's apartment, they discovered that his cell phone had blood on it.  The detectives returned to the interview room and told Petitioner that they had found blood on his cell phone.[6]  He then changed his story and told them that he had been in a fist fight with Givens and that may have been the source of the blood.  Based on that information, officers attempted to photograph Petitioner's hands to preserve any evidence of injury, but he sat on his hands and refused to allow the photographs. Petitioner then said he was ready to talk to the detectives.  At that point, detectives videotaped Petitioner's statement, wherein he described the attempted drug deal, the events resulting in the shooting of Deandra, and his shooting of Givens.  After the police officers videotaped his confession, Petitioner led them to the site on the Arkansas River where he disposed of the guns used in the shootings and to the site where he had left Givens' body.  Givens' partially charred body was recovered at the site identified by Petitioner, but the guns were never recovered from the river.

---

[5]      <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[6]      Subsequent DNA testing revealed that the blood on Petitioner's cell phone was Givens' blood.

As a result of those events Petitioner was charged in an amended information[7] with First Degree Murder (Count I), Attempted Robbery With Firearms (Count II), Shooting With Intent to Kill (Count III), and Possession of a Firearm After Former Conviction of a Felony (Count IV), in Tulsa County District Court, Case No. CF-2005-4894. At the conclusion of a jury trial, Petitioner was convicted of Counts I, II, and IV.  He was acquitted of Count III, Shooting With Intent to Kill. On January 7, 2008, the trial court sentenced Petitioner, in accordance with the jury's recommendation, to life imprisonment (Count I), eighteen (18) years imprisonment (Count II), and ten (10) years imprisonment (Count III), with the sentences ordered to be served consecutively. Petitioner was represented at trial by Paula Keck Moore, an attorney with the Tulsa County Public Defender's Office.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney Stuart W. Southerland, he raised the following six (6) propositions of error:

Proposition One:     It was error to refuse Appellant's request to instruct the jury on the offense of Accessory After the Fact.  The failure to instruct on Appellant's theory of defense constitutes a violation of the provisions of both Oklahoma statutory law and the Fourteenth Amendment to the United States Constitution.

Proposition Two:     Taken together, the admission of photographs of the charred body of the deceased violated the Oklahoma Rules of Evidence and served to deny Appellant the right to a fair trial in violation of the Fourteenth Amendment to the United States Constitution.

Proposition Three:     The warrantless search of Appellant's residence was conducted in violation of the Fourth Amendment of the United States Constitution as well as Article II, § 30 of the Oklahoma Constitution.  The fruits of the search of the apartment should have been suppressed.

---

[7]     Petitioner was originally charged in Count II with Robbery With Firearms.

4

Proposition Four:    Appellant's statements, made during the custodial interrogation in the hours following his arrest, were obtained in violation of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

      (a)    Appellant's statements were involuntary and inadmissible pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

      (b)    Appellant's statements were a product of his unlawful arrest in violation of the Fourth And Fourteenth Amendments to the United States Constitution.

Proposition Five:    Numerous items seized from Appellant's residence were irrelevant and prejudicial, violating the Oklahoma Rules of Evidence. The admission of the evidence denied Appellant the right to a fair trial in violation of the Fourteenth Amendment to the United States Constitution.

Proposition Six:    The accumulation of error in this case deprived Appellant of due process of law and a fair trial, therefore necessitating reversal pursuant to the Fourteenth Amendment to the United States Constitution.

(Dkt. # 8-1). In an unpublished summary opinion filed June 24, 2009, in Case No. F-2008-62 (Dkt. # 8-3), the OCCA rejected the direct appeal claims and affirmed the judgment and sentence of the trial court. Petitioner did not seek certiorari review at the United States Supreme Court.

Next, Petitioner filed an application for post-conviction relief in the district court. After the district court denied relief, Petitioner appealed. See Dkt. # 8-4. On post-conviction appeal, Petitioner raised the following propositions of error:

Proposition One:    Fundamental error occurred when the trial court permitted State witnesses to give inconsistent statements before the jury.

Proposition Two:    Trial counsel was ineffective and the district court should have granted Mr. Greggs an evidentiary hearing to prove that fact.

|                     |                                                                                                                                                                                          |
|---------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| Proposition Three:  | Appellate counsel was ineffective and the district court should have granted Mr. Greggs an evidentiary hearing to prove that fact.                                                        |
| Proposition Four:   | Each of these issues must be addressed on its legal merits.                                                                                                                               |

Id.  By order filed October 18, 2010, in Case No. PC-2010-748, the OCCA affirmed the decision of the district court, finding that, with the exception of Petitioner's claim of ineffective assistance of appellate counsel, all claims were barred by the doctrines of res judicata and waiver.  See Dkt. # 8-5.

On November 10, 2010, Petitioner filed his federal petition for writ of habeas corpus (Dkt. #1).  He raises the following grounds of error:

|            |                                                                                                                                                                                                                    |
|------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| Ground 1:  | Mr. Gregg's fundamental rights to due process and equal protection of the law were violated when the trial court refused to instruct the jury on the offense of accessory after the fact.                            |
| Ground 2:  | Mr. Gregg's fundamental rights to due process and equal protection of the law were violated when the trial court allowed the admission of photographs of the charred body of the deceased.                           |
| Ground 3:  | Mr. Gregg's fundamental rights to due process and equal protection of the law were violated when the State's governmental agents conducted a warrantless search of Petitioner's residence and the trial court should have suppressed the fruits of the search of the apartment. |
| Ground 4:  | Mr. Gregg's fundamental rights to due process and equal protection of the law were violated when the trial court allowed the admission of Petitioner's statements, that was [sic] made during the custodial interrogation following his arrest. |
| Ground 5:  | Mr. Gregg's fundamental rights to due process and equal protection of the law were violated when the trial court allowed into evidence seized prejudicial and irrelevant items from Petitioner's residence in violation of the Oklahoma Rules of Evidence. |
| Ground 6:  | Mr. Gregg's fundamental rights to due process and equal protection of the law were violated when the trial court permitted State witnesses to give inconsistent statements before the jury.                         |

Ground 7:    Mr. Gregg's fundamental rights to due process and equal protection of the law were violated by the ineffectiveness of his trial counsel.

Ground 8:    Mr. Gregg's fundamental rights to due process and equal protection of the law were violated by the ineffectiveness of his appellate counsel.

Ground 9:    Mr. Gregg's fundamental rights to due process and equal protection of the law were violated when the accumulation of errors in this case deprived him of due process of law and a fair trial.

Id.  In response, Respondent asserts that Petitioner's claims are procedurally barred, are not cognizable in this habeas proceeding, or do not justify habeas relief under 28 U.S.C. § 2254(d).  See Dkt. # 8.

## ANALYSIS

### A.    Exhaustion/Evidentiary Hearing

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes, see Dkt. # 8 at ¶ 4, and the Court agrees that, with the exception of his equal protection claims discussed below, Petitioner fairly presented the substance of his claims to the OCCA on direct and post-conviction appeal.  Therefore, the Court finds that consideration of those claims is not precluded by the exhaustion requirement of 28 U.S.C. § 2254(b).

The Court recognizes that in his petition, Petitioner asserts as part of each ground for relief that he was convicted in violation of his right to equal protection of the law.  See Dkt. # 1.  These equal protection claims have not been presented to the state courts and are unexhausted. Nonetheless, the Court shall deny habeas corpus relief on the claims.  28 U.S.C. § 2254(b)(2).  An equal protection violation occurs when the government treats someone differently than another who is similarly situated.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  In this

7

case, Petitioner fails to cite facts or law supporting his equal protection claims.  As a result, the

Court finds that Petitioner's allegations are conclusory and fail to establish a factual basis for an

equal protection claim.  See Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995).  "[B]are equal

protection claims are simply too conclusory to permit a proper legal analysis."  Straley v. Utah Bd.

of Pardons, 582 F.3d 1208, 1215 (10th Cir. 2009).  For that reason, Petitioner's request for habeas

corpus relief on any equal protection claim is denied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See

Williams v. Taylor, 529 U.S. 420 (2000).

**B.     Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be

applied by federal courts reviewing constitutional claims brought by prisoners challenging state

convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain

federal habeas relief only if the state decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S.

362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court

applies the correct federal law to deny relief, a federal habeas court may consider only whether the

state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S.

685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Further, the

"determination of a factual issue made by a State court shall be presumed to be correct.  The

8

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated grounds 1-5 and 9 on direct appeal.  See Dkt. # 8-3.  In addition, the OCCA adjudicated Petitioner's ineffective assistance of appellate counsel claim (ground 8) on post-conviction appeal.  Therefore,  the § 2254(d) standard applies to this Court's analysis of those grounds.

**1.      Refusal to give jury instruction (ground 1)**

As his first proposition of error, Petitioner claims that the trial court erred when it refused to give an instruction, as requested by defense counsel, on the charge of "accessory after the fact" as a "lesser related offense" of first degree murder.  See Dkt. # 1.  The record reflects that Petitioner testified in his own defense that, at the request of Deandra's sister, Kanitra Dunn, he helped dispose of Givens' body and cleaned up the apartment in exchange for $1,000.  See Dkt. # 10-17, Tr. Vol. VI at 1101-1110.  He denied any involvement in the shootings.  Id. at 1116.  Based on Petitioner's testimony, defense counsel requested that the jury receive an "accessory after the fact" instruction. Id. at 1187.  The trial judge denied the request and stated as follows:

> I don't find any OUJI instruction, unless the charge of accessory after the fact was actually made by the State, which it is not.  And I don't find any authority for accessory after the fact being a lesser included offense.  And I believe that it's unnecessary to instruct the jury on that issue.  I think that the story told by Mr. Greggs on the witness stand perhaps establishes that that's what he was, as a matter of law, but essentially this jury is just going to hear his story as a matter of fact in support of his general defense.  So I'll overrule your request.

Id. at 1187-88.  In rejecting this claim on direct appeal, the OCCA found that:

> [T]he trial court did not abuse its discretion by failing to give the requested accessory after the fact instruction as a "lesser-related" offense to first degree murder, as the evidence connecting Appellant to the crime as a principal was quite strong, while the evidence supporting the requested instruction was quite weak, coming almost entirely from Appellant's own testimony and in contradiction to his earlier statements.

Dkt. # 8-3 at 2.

The OCCA has ruled that "being an accessory to a felony is a separate substantive offense, and is not a lesser offense included within the felony, so that the trial court would have erred in giving such an instruction." Williams v. State, 620 P.2d 421, 422 (Okla. Crim. App. 1980) (citation omitted). Thus, "accessory after the fact" is not a lesser included offense of "first degree murder." State trial courts are not constitutionally required to instruct on offenses that are not lesser included offenses of the charged crime. See Hopkins v. Reeves, 524 U.S. 88 (1998); Van Woudenberg ex. rel Foor v. Gibson, 211 F.3d 560, 572 (10th Cir. 2000) (finding that failure to instruct on accessory after the fact was not error where the crime was not lesser included offense), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946 (10th Cir. 2001). As a result, Petitioner's claim concerns a violation of state law.

Federal habeas relief is not permitted for state law errors. See Rose v. Hodges, 423 U.S. 19, 22 (1975); Patton v. Mullin, 425 F.3d 788, 807 (10th Cir. 2005) (stating that, in general, matters concerning the giving of jury instructions are considered questions of state law and not proper subjects of federal habeas corpus review under 28 U.S.C. § 2254). It is well established that "errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial

10

conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions

when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of

a fair trial."). The burden on a petitioner attacking a state court judgment based on a refusal to give

a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction,

is less likely to be prejudicial than a misstatement of the law.'" <u>Maes</u>, 46 F.3d at 984 (quoting

<u>Henderson v. Kibbe</u>, 431 U.S. 145, 155 (1977)).

Upon review of the record, the Court finds that Petitioner was not denied a fundamentally

fair trial as a result of the trial court's refusal to issue the requested instruction. Nothing precluded

Petitioner from presenting his defense, and the jury was free to find him not guilty of first degree

murder based on his own trial testimony. It is clear the jury rejected his defense and found the State

had proved the elements of first degree murder. Petitioner is not entitled to habeas corpus relief on

ground 1.

**2.      Evidentiary rulings (grounds 2 and 5)**

As his second proposition of error, Petitioner claims that the trial court erred in admitting

photographs of the charred body of the deceased. On direct appeal, Petitioner complained that

State's Exhibits # 1 through # 12 amounted to a "gruesome onslaught" depicting the charred body

of the victim, and that the photographs were cumulative and prejudicial. <u>See</u> Dkt. # 8-1 at 19.

Petitioner also complained of the admission of a videotape of the scene where the body was

discovered as prejudicial and cumulative. <u>Id.</u> at 20. The OCCA denied relief on this claim, finding

as follows:

> [W]e find the trial court did not abuse its discretion by admitting the challenged
> photographs and videotape of the crime scene. *Lockett v. State*, 2002 OK CR 30, ¶
> 19, 53 P.3d 418, 425. Only two of the photos can be fairly labeled "gruesome," but
> they were no more so than other photos properly admitted. While the probative

11

value of those photos and the videotape was perhaps low, there is likewise little danger of unfair prejudice, given the strength of the evidence and Appellant's admissions. Appellant received the minimum sentence on the murder charge, a less than harsh sentence on Count II, and a fair sentence on Count IV. The admission of these photos and the videotape did not decide the case or have a prejudicial impact on sentencing.

(Dkt. # 8-3 at 3).

As his fifth ground of error, Petitioner alleges that the trial court erred in admitting into evidence prejudicial and irrelevant items seized from his residence, including an "ammo drum" for a rifle, a flak vest, a case containing a magazine for "some kind of long gun," and a scope for a rifle. See Dkt. # 1. Petitioner argues that those items were irrelevant to the charges he faced and were prejudicial. Id. The OCCA found that "the admitted evidence pertaining to guns other than the handgun did not prejudice Appellant." See Dkt. # 8-3 at 5.

"[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also Hooks v. Workman, 606 F.3d 715, 748 (10th Cir. 2010). In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67-68. "In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes, 46 F.3d at 987 (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)). "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements," when engaged in such an endeavor a federal court must "tread gingerly" and exercise "considerable self-restraint." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)).

12

After reviewing the record in this case, the Court finds Petitioner has not made the necessary showing.  As to the ground 2 claim, the record reflects that, prior to commencement of trial, the trial judge reviewed the photographs in chambers.  After carefully reviewing the photographs in light of the parties' arguments and over defense counsel's objections, the trial judge ruled that all of the photos were admitted, with the exception of the photo labeled State's Exhibit # 6.  This Court has reviewed the photos and finds that, in light of all the evidence presented at trial, the complained of photographs were neither repetitive nor unduly prejudicial.

As to Petitioner's ground 5 claim, the record reflects that several pieces of evidence, including rifle accessories and a flak vest, seized from a closet in Petitioner's apartment, were admitted into evidence over defense counsel's objection.  See Dkt. # 10-15, Tr. Vol. IV at 710-11. The trial judge found that the objects corroborated Deandra's testimony that Petitioner was known to have guns.  Again, the evidence complained of was neither repetitive nor unduly prejudicial. In addition, the Court agrees with the OCCA's finding that, in light of the substantial evidence of Petitioner's guilt and the sentences he received, the admission of the complained of evidence did not decide the case or have a prejudicial impact on sentencing.  In summary, Petitioner has failed to demonstrate that admission of the photographs of the deceased and admission of evidence seized from his apartment rendered his trial fundamentally unfair.  Petitioner's request for habeas corpus relief on grounds 2 and 5 shall be denied.

### 3.    Warrantless search (ground 3)

As his third ground of error, Petitioner claims that law enforcement officers conducted a warrantless search of his residence and that the trial court should have suppressed the fruits of the search.  See Dkt. # 1.  On direct appeal, the OCCA found that:

13

> [W]e find the trial court did not abuse its discretion by denying Appellant's motion to suppress.  Under Oklahoma law, a warrantless arrest may be accomplished in a person's home when it is consensual or required by certain exigent circumstances.
>
> Here, there *were* exigent circumstances.  Furthermore, the officers entered as per consent vis-à-vis apparent authority.  Once officers were properly inside the apartment for an arrest, the items seized were clearly gathered by proper means, i.e., a search incident to an arrest, a protective pat-down for weapons, plain view, and by Appellant's statement.  Furthermore, to the extent any of the "search" lacked a valid consent, the evidence was still properly admitted under the "inevitable discovery" to the warrantless search exception.

(Dkt. # 8-3 at 3-4 (footnotes omitted) (citations omitted)).

Respondent contends that Petitioner has been provided the opportunity to fully and fairly litigate these Fourth Amendment issues, thus precluding habeas relief according to Stone v. Powell, 428 U.S. 465 (1976).  The Court agrees.  In Stone v. Powell, the Supreme Court held that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial. Id. at 482.  The Tenth Circuit has reiterated that a federal habeas corpus court may not overturn a state criminal conviction because of a violation of the Fourth Amendment if the petitioner had a full and fair opportunity to litigate the claim.  Brown v. Sirmons, 515 F.3d 1072, 1082 (10th Cir. 2008);  Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992); Gamble v. Oklahoma, 583 F.2d 1161, 1165 (10th Cir. 1978).

The record demonstrates that the state courts granted Petitioner a full and fair opportunity to litigate his Fourth Amendment claims, both during trial proceedings and on direct appeal. Prior to commencement of trial, Petitioner filed a motion to suppress challenging the validity of the warrantless entry into his home and requesting suppression of evidence recovered as a result of the search.  On May 17-18, 2007, the trial judge conducted a hearing on the motion.  See Dkt. # 10-5, Tr. Mot. Hr'g at 1-169. The trial judge overruled Petitioner's motion to suppress with respect to the

14

warrantless entry. Id. at 137-38.  The trial judge also determined that a search warrant was properly

issued.  Id. at 165-66.  Petitioner also raised his Fourth Amendment claims on direct appeal, see Dkt.

# 8-1, where, as discussed above, the OCCA rejected the claims, see Dkt. # 8-3.

Based on the record, the Court concludes that Petitioner had a full and fair opportunity to

litigate his Fourth Amendment claims in the state courts.  As a result, this Court is precluded from

considering the issues raised in ground 3 of Petitioner's petition for a writ of habeas corpus based

on Stone, 428 U.S. at 494.  See also Gamble, 583 F.2d at 1165 (opportunity for full and fair

litigation in state court under Stone v. Powell includes opportunity to raise Fourth Amendment

claim, full and fair evidentiary hearing, and recognition and application of correct Fourth

Amendment standards).  Petitioner's request for habeas relief on ground 3 shall be denied.

### 4.      Miranda violation (ground 4)

As his fourth ground of error, Petitioner claims that the trial court improperly allowed the

admission of his videotaped confession made during custodial interrogation following his arrest.

See Dkt. # 1.  Prior to trial, the trial court conducted a lengthy Jackson v. Denno[8] hearing to

determine the admissibility of the videotaped confession. See Dkt. ## 10-2, 10-3, Tr. Hr'g dated

Apr. 30, May 2, May 4, May 7, 2007 at 2-419. The trial court found that under the totality of the

circumstances, Petitioner's confession was "insufficiently coercive to constitute a Fifth Amendment

violation."  See Dkt. # 10-3, Tr. Hr'g at 417.  Therefore, the trial judge denied Petitioner's motion

to suppress the confession.  Id. at 419.  In rejecting this claim on direct appeal, the OCCA cited

Gomez v. State, 168 P.3d 1139, 1141-42 (Okla. Crim. App. 2007), and found that "the trial court

---

[8]       Jackson v. Denno, 378 U.S. 368, 376 (1964) ("A defendant objecting to the admission of
a confession is entitled to a fair hearing in which both the underlying factual issues and the
voluntariness of his confession are actually and reliably determined.").

did not abuse its discretion by finding Appellant's statements were given voluntarily and were not obtained in violation of the U.S. Constitution." See Dkt. # 8-3 at 4-5. Respondent asserts that because the OCCA's rejection of this claim on direct appeal is not an unreasonable application of the facts in evidence or contrary to Supreme Court precedent, § 2254(d) prevents the granting of federal habeas relief on this issue.

The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself. In Miranda, the Supreme Court concluded that, "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." Miranda, 384 U.S. at 467; Berkemer v. McCarty, 468 U.S. 420, 433 (1984). It is well settled that the Miranda warning is a constitutional requirement adopted to reduce the risk of a coerced confession and to implement Fifth Amendment protections. Dickerson v. United States, 530 U.S. 428, 444 (2000). After being advised of his Miranda rights, an accused may himself validly waive his rights by an express statement that he is willing to make a statement. North Carolina v. Butler, 441 U.S. 369, 374 (1979). In Berkemer, the Court observed that, "cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." Berkemer, 468 U.S. at 433 n.20.

Statements to the police during a custodial interrogation are inadmissible if the defendant did not waive his Miranda rights knowingly and voluntarily. See Berghuis v. Thompkins, 560 U.S. 370, 382 (2010). In Miranda, the Court admonished that "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not

voluntarily waive his privilege." Id. at 476. Whether the waiver was valid is a mixed question of law and fact. See Mitchell v. Gibson, 262 F.3d 1036, 1059 (10th Cir. 2001). "The inquiry has two distinct dimensions." Moran v. Burbine, 475 U.S. 412, 421 (1986). As the Supreme Court explained:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Id. (internal quotation marks omitted).

In support of this claim, Petitioner merely recites the facts as set forth in his direct appeal brief. See Dkt. ## 1, 8-1. As with all of his habeas claims, he presents no argument explaining how the OCCA's denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. However, having examined the record, the Court finds that the totality of the circumstances surrounding the interrogation supports the conclusion that Petitioner's confession was uncoerced and that his rights waiver was made knowingly and voluntarily. The record reflects that, at the conclusion of the Jackson v. Denno hearing, the trial judge examined all of the attendant circumstances and concluded that Petitioner's confession was not obtained by coercion or improper inducement. See Dkt. # 10-3, Tr. Mot. Hr'g at 416-19. That ruling is supported by evidence presented at the hearing reflecting that Petitioner was not coerced, threatened, or promised leniency.

In addition, The Court has reviewed the videotaped confession. See Dkt. # 11. At the beginning of the tape, one of the police officers says "[g]o ahead and take care of your business here and we'll see about seeing your baby." See Dkt. # 10-15, Tr. Vol. IV at 770. Petitioner was allowed

to see his baby at the Detective Division before he was booked at the Tulsa County Jail.  See Dkt. # 10-16, Tr. Vol. V at 874.  Officer Taylor testified that on occasion, he allows suspects to contact family members and that he did not promise Petitioner he would see his baby in exchange for his statement.  Id. at 866.  The arrangement allowing Petitioner to see his baby did not serve to render the confession inadmissible.  Also, near the beginning of the tape, Petitioner asks if the officers can call the District Attorney (DA).  See Dkt. # 11.  He is advised that because it is Friday evening, no one would be in the DA's Office and that they would work over the weekend to gather information to present to the DA.  See id.  That exchange corroborates Detective Smith's testimony acknowledging that he told Petitioner that the detectives would prepare a package for the DA, but that they have no say in what charges are filed.  See Dkt. # 10-15, Tr. Vol. IV at 713-14.  There were no promises of leniency or threats made on the tape and all of the police officers denied making promises of leniency or threats during their interaction with Petitioner.  See Dkt. # 10-15, Tr. Vol. IV at 687, 699, 700, 716, 804, 837; Dkt. # 10-16, Tr. Vol. V at 866, 901.

Also, the record includes a copy of the Notification of Rights Waiver, executed by Petitioner on October 28, 2005, at 7:25 p.m.  See Dkt. # 10-23, O.R. at 86.  At trial, Detective Regalado testified that, prior to interviewing Petitioner, he determined that Petitioner had an 11th grade education, then read each Miranda right out loud to Petitioner.  See Dkt. # 10-15, Tr. Vo. IV at 682-84.  Petitioner placed his initials beside each right, acknowledging that he understood the rights being waived.  Id.  Petitioner then signed the waiver portion of the form.  Id.  Detective Regalado

testified that Petitioner did not ask for a lawyer.[9]  Id. at 687.  At trial, Petitioner confirmed that he

had initialed and signed the form.[10]  See Dkt. # 10-17, Tr. Vol. VI at 1154, 1182.  That evidence

supports the conclusion that Petitioner's waiver was made knowingly and voluntarily.  Therefore,

the Court finds Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was

contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

Petitioner's request for habeas relief on ground 4 shall be denied.

### 5.        Ineffective assistance of appellate counsel (ground 8)

In ground 8, Petitioner complains that he received ineffective assistance of appellate counsel.

See Dkt. # 1.  Specifically, Petitioner cites to appellate counsel's failure to raise the claim identified

in "Ground Six and to some extent Eight" on direct appeal.  In adjudicating Petitioner's claim of

ineffective assistance of appellate counsel on post-conviction appeal, the OCCA cited Cartwright

v. State, 708 P.2d 592 (Okla. Crim. App. 1985), and stated as follows:

> [T]he record does not support this claim [of ineffective assistance of appellate
> counsel].  Petitioner complains appellate counsel did not raise issues he believes
> should have been raised on direct appeal.  Failure to raise each and every issue is not
> determinative of ineffective assistance of counsel and counsel is not required to
> advance every cause of argument regardless of merit.

(Dkt. # 8-5 at 2).

---

[9]      Petitioner testified at both the Jackson v. Denno hearing, see Dkt. # 10-3, Tr. Hr'g at 297, 310, 335, 338, and at trial, see Dkt. # 10-17, Tr. Vol. VI at 1112, 1115, that he asked for an attorney during his questioning but that the police officers ignored his requests and continued asking questions.  Nothing in the record supports Petitioner's claim and all of the police officers testified consistently that Petitioner never asked for an attorney.  See Dkt. # 10-2, Tr. Hr'g at 31, 50, 77, 140, 171, 202, 210; Dkt. # 10-15, Tr. Vol. IV at 687, 700, 760, 804.

[10]     In contrast to his testimony at trial, Petitioner testified during the Jackson v. Denno hearing that he was not read his Miranda rights during questioning.  See Dkt. # 10-3, Tr. Mot. Hr'g at 342.  When presented with the signed and initialed Notification of Rights Waiver form, he testified that "it doesn't look like [my signature]" and that "those don't look like [my initials]."  Id. at 343.

The OCCA's statement that appellate counsel is not required to "advance every cause of argument regardless of merit" deviates from the controlling federal standard. Cargle v. Mullin, 317 F.3d 1196, 1202-05 (10th Cir. 2003) (explaining that (1) the merit of the omitted claim is the focus of the appellate ineffectiveness inquiry, (2) omission of a sufficiently meritorious claim can, in itself, establish ineffective assistance, and, thus, (3) the state court's rejection of an appellate ineffectiveness claim on the basis of the legal premise invoked here is wrong as a matter of federal constitutional law). See also Milton v. Miller, --- F.3d ---, No. 12-6187, 2014 WL 892890, at *7 (10th Cir. March 7, 2014); Malicoat v. Mullin, 426 F.3d 1241, 1248 (10th Cir. 2005) (following Cargle). Because the OCCA's analysis of Petitioner's allegation of ineffective assistance of appellate counsel deviated from the controlling federal standard, it is not entitled to deference on habeas review. Cargle, 317 F.3d at 1205; see also Malicoat, 426 F.3d at 1248. Therefore, the Court will analyze de novo Petitioner's claims of ineffective assistance of appellate counsel.

When assessing claims of ineffective assistance of appellate counsel, this Court applies the Strickland two-pronged standard used for general claims of ineffective assistance of trial counsel. See Smith v. Robbins, 528 U.S. 259, 285 (2000) (citing Strickland v. Washington, 466 U.S. 668 (1984)). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). The Tenth Circuit has explained that,

> If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

20

Cargle, 317 F.3d at 1202 (citation and footnote omitted); see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998).

On post-conviction appeal, Petitioner identified four (4) inconsistent statements made by Deandra during the investigation of the events surrounding the shootings and complained that, despite those inconsistencies, she was allowed to testify at trial. See Dkt. # 8-4 at 3-4. He also claimed that the detectives were improperly allowed to testify as experts and to express an opinion on the "ultimate issue" of Petitioner's guilt. Id. at 4-6. In addition, he alleged that trial counsel provided ineffective assistance in failing to object to the testimony of Deandra and the detectives. Id. at 7-8. Lastly, he argued that appellate counsel provided ineffective assistance in failing to raise those post-conviction claims on direct appeal. Id. at 9-11. He raises these same claims in grounds 6, 7, and 8 of his habeas petition. See Dkt. # 1 at 20-28.

Upon de novo review, this Court finds that Petitioner's claims of ineffective assistance of appellate counsel lack merit. First, Petitioner fails to acknowledge that the issue of Deandra's credibility was brought to the jury's attention when Detective Stout confirmed, on cross-examination by defense counsel, that Deandra had given more than one story to the investigating police officers. See Dkt. # 10-15, Tr. Vol. IV at 800. Thus, defense counsel made sure Petitioner's jury was aware that Deandra had made inconsistent statements to the police. Petitioner has not demonstrated that the result of his appeal would have been different had the issues of Deandra's inconsistent statements and ineffective assistance of trial counsel for failing to object to Deandra's testimony been raised on direct appeal. Therefore, appellate counsel did not provide ineffective assistance with regard to those claims.

21

Similarly, none of the detectives offered an opinion on the ultimate issue of Petitioner's guilt. Petitioner points to no specific allegedly improper testimony by the detectives, and makes only conclusory allegations. Further, trial counsel argued forcefully, but unsuccessfully, for suppression of Petitioner's videotaped confession as having been coerced. Petitioner fails to demonstrate the existence of an omitted argument that could have changed the outcome of the ruling on the motion to suppress. Thus, Petitioner has not demonstrated that the result of his appeal would have been different had appellate counsel challenged either the detectives' testimony or trial counsel's performance with respect to the detectives' testimony. Therefore, appellate counsel did not provide ineffective assistance as to those claims.

In summary, the issues omitted by appellate counsel are meritless. Therefore, appellate counsel did not perform deficiently, Strickland, 466 U.S. at 687, and Petitioner is not entitled to habeas corpus relief on ground 8.

### 6. Cumulative error (ground 9)

In ground 9, Petitioner alleges that the accumulation of errors in this case deprived him of due process of law and a fair trial. See Dkt. # 1 at 29. On direct appeal, the OCCA found "no cumulative error requiring relief." See Dkt. # 8-3 at 5.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). The Tenth Circuit Court of Appeals has repeatedly held that cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d

1100, 1116 (10th Cir. 2003).  Cumulative impact of non-errors is not part of the analysis.  Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing Rivera, 900 F.2d at 1471).  "In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." Matthews v. Workman, 577 F.3d 1175, 1195 n.10 (10th Cir. 2009) (internal quotation omitted).  "[T]he task 'merely' consists of 'aggregat[ing] all the errors that have been found to be harmless' and 'analyz[ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'"  Grant v. Trammell, 727 F.3d 1006, 1025 (10th Cir. 2013) (quoting Rivera, 900 F.2d at 1470).  "Only if the errors 'so fatally infected the trial that they violated the trial's fundamental fairness' is reversal appropriate." Id. (quoting Matthews, 577 F.3d at 1195 n.10).  "[A]ll a defendant needs to show is a strong likelihood that the several errors in his case, when considered additively, prejudiced him." Id. at 1026.

In this case, the Court does not find two or more actual errors, nor were there constitutional errors that fatally infected the trial.  See Matthews, 577 F.3d at 1195 n.10.  As a result, there is no basis for a cumulative error analysis.  For that reason, Petitioner is not entitled to habeas corpus relief on ground 9.

**C.       Procedural bar (grounds 6 and 7)**

In ground 6, Petitioner alleges that his due process rights were violated when the trial court permitted the State's witness, Deandra Dunn, to give inconsistent statements and allowed the detectives to testify as experts.  See Dkt. # 1 at 20.  In ground 7, Petitioner claims that he was denied

the effective assistance of trial counsel when counsel failed to lodge objections to the events giving rise to the claims raised in grounds 1-6, thereby failing to preserve the issues for appellate review and limiting the OCCA's review to evaluating for plain error.[11] Id. at 23. These claims were not raised on direct appeal, but were raised for the first time on post-conviction appeal. See Dkt. # 8-4 at 7, 16. The OCCA found that all issues not raised in the direct appeal, which could have been raised, are waived. See Dkt. # 8-5 at 2.

The doctrine of procedural default prohibits a federal court from considering a specific habeas claim where the state's highest court has declined to reach the merits of that claim on independent and adequate state procedural grounds, unless petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 724 (1991); see also Matthews, 577 F.3d at 1195; Maes, 46 F.3d at 985; Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991).

Applying the principles of procedural default to these facts, the Court concludes that Petitioner's grounds 6 and 7, including his claim of ineffective assistance of counsel first raised in his application for post-conviction relief, are procedurally barred from this Court's review. The state court's procedural bar as applied to these claims was an "independent" ground because Petitioner's failure to comply with state procedural rules was "the exclusive basis for the state court's holding." Maes, 46 F.3d at 985. In addition, based on Okla. Stat. tit. 22, § 1086, the OCCA routinely bars claims that could have been but were not raised on direct appeal. As a result, the bar imposed by

---

[11]    The Court notes that all of the issues raised on direct appeal had been properly preserved for appeal by trial counsel. The OCCA did not apply the "plain error" standard in resolving Petitioner's direct appeal claims. See Dkt. # 8-3.

the OCCA on the claims raised in ground 6 was based on state law grounds adequate to preclude federal review.

When the underlying claim is ineffective assistance of counsel, the Tenth Circuit Court of Appeals has recognized that countervailing concerns justify an exception to the general rule of procedural default. Brecheen v. Reynolds, 41 F.3d 1343, 1363 (10th Cir. 1994) (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)). The unique concerns are "dictated by the interplay of two factors: the need for additional fact-finding, along with the need to permit the petitioner to consult with separate counsel on appeal in order to obtain an objective assessment as to trial counsel's performance." Id. at 1364 (citing Osborn v. Shillinger, 861 F.2d 612, 623 (10th Cir. 1988)). The Tenth Circuit explicitly narrowed the circumstances requiring imposition of a procedural bar on ineffective assistance of counsel claims first raised collaterally in English v. Cody, 146 F.3d 1257 (10th Cir. 1998). In English, the circuit court concluded that:

> Kimmelman, Osborn, and Brecheen indicate that the Oklahoma bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone. All other ineffectiveness claims are procedurally barred only if Oklahoma's special appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied.

Id. at 1264 (citation omitted).

In this case, Petitioner was represented during pretrial proceedings by attorneys Anna P. Johnson and Paula Keck Moore. At trial, he was represented by attorney Moore. On appeal, Petitioner was represented by attorney Stuart W. Southerland. For purposes of the first requirement identified in English, the Court finds that Petitioner had the opportunity to confer with separate counsel on appeal. The second English factor requires that the claim could have been resolved either "upon the trial record alone" or after adequately developing a factual record through some other

25

procedural mechanism. Id. at 1263-64. Petitioner's defaulted claims are that trial counsel failed to object both to the inconsistent statements by Deandra and to allowing the detectives to testify as experts. Those claims can be resolved upon the trial record alone. As a result, Petitioner has failed to carry his burden of demonstrating that Oklahoma's procedural bar is inadequate and his claims of ineffective assistance of trial counsel as raised in his post-conviction proceedings are procedurally barred.

Because of the procedural default of the identified claims in state court, this Court may not consider the claims unless Petitioner is able to show cause and prejudice for the default, or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered. See Coleman, 501 U.S. at 750. The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. Id. As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

In his petition, Petitioner argues that ineffective assistance of appellate counsel provides "cause" for his failure to raise his defaulted claims on direct appeal. However, the Court has addressed and rejected Petitioner's claim of ineffective assistance of appellate counsel in Part B(5) above. Therefore, ineffective assistance of appellate counsel cannot serve as cause to overcome the procedural bar.

Petitioner's only other means of gaining federal habeas review of his defaulted claims is a claim of actual innocence under the fundamental miscarriage of justice exception.  Herrera v. Collins, 506 U.S. 390, 403-404 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-341 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995).  However, nowhere in his petition does Petitioner claim to be actually innocent of the crimes for which he was convicted.  Therefore, Petitioner does not fall within the narrow "fundamental miscarriage of justice" exception.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his defaulted claims are not considered, the Court concludes that grounds 6 and 7 are procedurally barred.  Coleman, 501 U.S. at 724.  For that reason, Petitioner's request for habeas corpus relief on ground 6 and 7 shall be denied.

**D.  Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial

of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA is debatable among jurists of reason. See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004). As to those claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the petition on procedural grounds is debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## CONCLUSION

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.    The Clerk of Court shall note on the record the substitution of Robert Patton, Director, as party respondent in this case.

2.    The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

3.    A separate judgment in favor of Respondent shall be entered in this matter.

4.    A certificate of appealability is **denied**.

**DATED** this 19th day of March, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE